This court now resumes its session. I guess it's now good afternoon, most likely. So good afternoon. I'm Judge Gould, presiding and delighted to sit with Judges Bennett and Nelson. We appreciate all the distinguished counsel appearing today before us during pandemic for the appellants. If you want to make rebuttal, please try to do your best to stop before all your scheduled time is up. But if you get in a jam and need a few more minutes, please just ask me and I'll give it to you. I think without further ado, we should turn to Elsaesser v. Mountain West. And for the appellant, dear, we have for the appellants, we've got, is it Matthew Christensen? Your Honor, I'm here representing Mr. Elsaesser, who's the appellee. Billy. Okay, so then the appellants for Mr. Edson and Mr. Manwaring. Your Honor, this is Gary Edson representing the Mountain West and Stock Boise appellants, and we're prepared to proceed. I do have one preliminary point, and that is where we only have 15 minutes between the two appellants. Mr. Manwaring and I have agreed that the time would be split. I would take the initial 10 minutes reserved to for rebuttal, and Mr. Manwaring would use three minutes. Okay, that was my understanding of your plan. But again, if either of you need an extra minute or two, I'll provide it to you. Thank you very much, Your Honor. Please proceed. Thank you, Your Honor. There are essentially four issues being presented on appeal that we are asking the court for relief from Judge Myers' opinion after a bench trial in a bankruptcy case. And the issues essentially were whether recorded deeds of trust securing real property were properly recorded and gave notice. The trustee attacked those deeds of trust on the basis that the notaries at the time that the corporate officer executed the deeds of trust did not ask a question of the corporate officer whether he was executing the documents on behalf of the corporation. Can I ask a question to start out with that? That's the acknowledgment issue, I take it. That is correct, Your Honor. Yeah, so as I went back through the bankruptcy court's decision, it seemed like it relied heavily on the stipulated facts. And I'm interested in this because for three of the four deeds, starting at paragraph 12 of the stipulated facts, and I assume all parties stipulated this. It says Ms. Miller, who's the notary, did not request that Mr. Piles make an oral statement. Okay, that seems correct. Or otherwise acknowledge the document. And I'm trying to figure out why that was in the stipulated facts because the bankruptcy court seemed to take that to mean that there was already a stipulation that there had not been acknowledgment by the parties. And I'd like to hear what you have to say. What I'm assuming is meant in paragraph 12, and the same thing follows through for two of the others, is that there was no acknowledgment at the time of signing the document. Because if you look at paragraph 15, paragraph 15 seems to fit within what I would assume is acknowledgment, is that Ms. Miller worked for Mr. Piles and had seen the corporate certificate of Shiloh Management and knew him to be the president of the company at all times. And that would seem to me to satisfy the acknowledgment statute. So can you explain to me why paragraph 12? Was that inartful in how it was drafted? Was it misinterpreted by the bankruptcy court? Or is there something else I'm missing here? Your Honor, thank you for catching on that specific part of the stipulated facts. The trustee and trustees council insisted throughout this litigation that there was not a proper acknowledgment because there was not a verbal statement in the stipulated facts. At that point, on condition that the other language included was that they executed the documents in front of a notary who were familiar with him as an officer of the corporation. Excuse me, I don't know. At any rate, what happened was the three notaries were familiar with Mr. Piles, knew his responsibility and positioned as president. So under all prior case law involving notary acknowledgments in the state of Idaho and specifically the case that the trustee has relied on is a case called Sleight, Credit Bureau of Preston versus Sleight, saying that it's a false. You can have, even though it's properly recorded otherwise, that a false acknowledgment can be a basis to have the recording deemed ineffective. In Sleight, Your Honor, I've quoted from it in my brief, but basically Sleight is a very different case. The facts there are that the individual signing the deeds of trust in that case specifically stated, we never signed in front of the notary. We don't remember ever signing the documents. So, Counselor, getting back a bit to Judge Nelson's question, is what you're telling us that what the stipulation meant and the way the bankruptcy court took it as no words were spoken? And that was conceived, Your Honor. Yes, that is correct, that no words were spoken. Your position, and this was before the bankruptcy court and before us, is that what's said in paragraph 15 and corresponding to the other two, where Ms. Miller had specific knowledge, that was an acknowledgment. That's sufficient for acknowledgment under Idaho law. Is that your position? That is absolutely our position, Your Honor. And if that's true, then help me out on quality properties, because that's the fourth deed of trust. And that was a different notary, Andy Axon, who apparently had notarized many documents for Mr. Piles, but did not specifically know. Well, that's what I'd like to know. Did she know anything specifically about Shiloh Management? Your Honor, I think that's better left to Mr. Mannering, but I would say this, at trial, all three of the notaries, two were former employees of Pioneer Title, had done literally hundreds of acknowledgments for Shiloh Management, knew Mr. Piles and knew his relationship to the corporation, so the answer to that would be yes. The third person who notarized documents was Jamie Miller, who was the assistant, and I believe she had a formal title like office manager. Well, Ms. Miller specifically says that, and Ms. Fitzgerald specifically says that she'd notarized documents. Well, and I guess for that matter, so does Ms. Axon, although Ms. Axon and Ms. Fitzgerald didn't specifically state they knew a lot about Shiloh, but you're saying that they both did know about his relationship with Shiloh. Yes, and I believe that was stipulated by all counsel, that there was no dispute that all three notaries knew the relationship of Mr. Piles to the corporation and had notarized documents, specifically these types of deeds of trust in the past. Okay, so we've got this oral acknowledgment issue that's out there, and the bankruptcy court went the way he did on that, but separate from that, what was not before the bankruptcy court on the acknowledgment issue was the new case law. The case law seems to be very clear that it's retroactive. I think by all accounts, they were trying to rectify what the legislature perceived to be an open question about notarized documents prior to 2017. Here's my only concern. Number one, the bankruptcy court hasn't weighed in on this. Normally we would get this up with a lower court to review. But the second is, most all of the other retroactive legislations that we've seen in Idaho specifically say that it applies not only retroactively, but also to pending litigation. So here I'm wondering if there's some play in the joints where there's like a one off for this case only that the legislature said, hey, it applies to anything that happened prior to 2017, but they didn't make the express declaration that applied to pending litigation. So why does it apply in your case? Is that not required language if it just applies to prior actions? I think that the answer there is that the issue was addressed twice. First, when the 2017 amendments were prepared, they put in a savings clause specifically to address that issue because of the opinion that was written by Judge Meyer in the first case, the Lucille Borses Trust case. They then did a second savings clause. And in the preamble to the state legislation, which is included in my supplemental brief, they specifically said that they were preparing and passing that legislation specifically to address that case. So clearly, and then making the reference to the statute applying to everything pre-2017, there's no way that my client's deeds of trust can be excluded from that, regardless of when the effective date of that legislation. Okay, so you're saying there's, and I must have missed that, there's preamble language that says it was specifically adopted for this. I mean, it makes sense that that's true, but I just hadn't seen the language. Counsel, I'm sorry, are you talking in what you just described? Were you talking about the statement of purpose or were you talking about something else? No, Your Honor, that's correct. The statement of purpose is what I was referencing. So in Idaho law, I don't know the answer to this. Is a statement of purpose like this considered part of the legislation or is it considered legislative history? I believe it would be considered legislative history, but I think that's what I thought. Thank you, Your Honor. The other, because I'm getting low on time, if there's... I actually, if Judge Gould will indulge, and I don't know if you're the right person or Mr. Manwaring is, but I have some big concerns on the statute of frauds. And this appears to be an interesting factual scenario. And I want to make sure I have the facts right. As I read the... I'm looking at ER page 421. This is the deed of trust, or at least one of them. Oh, this is the only one at issue, which is the quality properties deed. That's the only one that the statute of fraud applies to. Is that correct? That's true. And that would be Mr. Manwaring's issue. Okay, I'll address it with him then. Thank you. Well, Mr. Edson, before you run out of time, can you give us even briefly your position on whether any of the questions should be certified to the Idaho Supreme Court? I would say not, Your Honor, for this reason. The very similar issue was before the panel two years ago in 2020. That case specifically addressed the issue of what is an appropriate form of acknowledgement in the state of Idaho. The panel at that time ruled that the Big River Grain case, which is cited in our materials, was the case law, is the case law in the state of Idaho, because these are all prior 2017 transactions. Was that a published decision? Yes, it was. Yes, Your Honor. It's in our materials. It was a 1983... Mr. Edson, I don't think it was fed forth. I think it was an unpublished disposition of this court, was it not? Anyway, it is what it is. Yes. The point I was trying to make is that when the panel looked at this question just as recently as 2020, looking at what the Idaho law is on the subject, they said that the criteria, basically, is that if there is some defect, that the notary didn't do a notarial act, that it could be cured. And that was a technical defect that did not make it prohibitively unrecognizable in the recording statutes. I'm almost out of time, and I think what I'll have to do is reserve speaking to the other issues, the procedural issues, the statutory amendments, and the issue on the identifying the notes, whether they have different dates. But I would just remind the court the citations that Judge Meyer relied on, those two North Carolina cases, that those are, in our opinion, the correct and proper interpretation of the law. And the issue being that there wasn't a date that was exactly identical with the deed of trust in the promissory note. They were different by a few days. And the trustee's position was that because they didn't have the identical dates, that they didn't represent the note represented in the security instrument. Okay, Mr. Edson. Thank you. How much time can you plan to reserve? Two minutes, if there's adequate time. Well, there's always adequate time when our questioning takes up your time, and I think the other judges would prefer that you have your full rebuttal, and so do I. Thank you very much, Your Honor, I appreciate it. Proceed to Mr. Manory. You're on mute, Mr. Manory.  Well, but, Counsel, you have the deed that is raising a very thorny statute of frauds issue, and Idaho has, I don't know if it's unusual, but it's strict on statute of frauds. The question in my mind is, can we decide this? Do we have enough information for us to decide this? And the way I see this issue is we've got a federal district court, Judge Dee Benson sitting by designation, who issued a District of Idaho case and said that in his opinion, a tax parcel would not be enough. And then we've got Justice Jones issuing a special concurrence from the Idaho Supreme Court saying that he, in his view, a tax parcel would be enough. That doesn't give me any assurance of what Idaho law would be on that question, but I want to walk you through an alternative that I'm wondering if this bridges that gap. In the deed, you, the deed at issue, the deed of trusted issue, cites Exhibit A. Exhibit A is at page 425 of the ER, and that, am I correct, that that is indeed, Exhibit A is the parcel master inquiry. Is that a tax parcel printout? Is that what that is? It appears to be, Your Honor. That's that's the legal description that was attached to my client's deed of trust. OK, so we now have a discrepancy, as I talked about, about whether a tax parcel is enough. But what's interesting is, is here you've attached a tax parcel and tax parcel in the legal description says lot one block one Gilgal subdivision to, you know, and if you if you pull that up, which appears to be Exhibit 200 at page 426 of the ER, that's the Gilgal subdivision. And that clearly has a legal description that I think by all accounts would be adequate because it has the meets and bounds. Would the legal description contained in Exhibit A be enough to reference a document that we could bring in and not looking at, you know, extrinsic evidence that we could look to? What case would we rely on to say that that's that's OK? Let me let me go back to the Exhibit A and I'm out of time now. Yeah, all right. Exhibit A, although it is a tax generated document, it has the parcel number. It has the street address, the house number. It has the lot number. It has the block number and it has the name of the subdivision in other parts of the deed of trust. It has the county and the state. So it has every point of reference other than the recording number of the plaque. And that's where Judge Meyer said, well, you're you're deficient. That's not adequate under these cases. Now, I think the court needs to go to the last words of the Idaho Supreme Court. And that is the Tri-Core Investments case cited in both our briefs. And here's the legal description from that case that it allowed the opposing party to attack it as being inadequate. It says, quote, the sellers reserve and retain from Parcel A and buyers shall create in compliance with Bonner County planning and zoning provisions and approval. A parcel in the size not less than 200 feet of waterfront or two T.W.O. 100 foot parcels. Consistent with buyers development adjacent to Tax 31 between the existing access road and the lake. The question before the court in Tri-Core Investments was, was that exact enough or adequate enough? Because it incorporated a reference to extrinsic evidence, the Bonner County planning and zoning provisions. It didn't say a recording number. It didn't say. Is Tri-County, is that it? Sorry. The case again is Tri, what are you quoting from? Tri-Core Investments from April 2021 last year. And that's a Idaho Supreme Court case. Yes. The last words of the Idaho Supreme Court on this issue. And and the Supreme Court went through all those previous cases. The Lexington Heights, the Ray versus Frazier, the McCarty, the Tri-Core Investments or the McCarty. And then it and then it ruled that here's the ruling. Quote, the reservation references Bonner County planning and zoning provisions, which are admissible to sufficiently identify the property being reserved. Thus, we hold the Tri-Core PSA satisfies the statute of fraud. That's the same situation. And I want you, I would ask the court to refer to the Tri-Core Investments case, how it handled extrinsic evidence. And then read the testimony of the Owyhee County recorder who testified at trial. She was provided a copy of the deed of trust and requested to find the property. And here's her answer. Quote, all I did was search on my computer system the name of the subdivision, which is Gilgal. And it came right up on the top with the small exhibit. And that's where we got exhibit 200, which is the plot that your honor represented that has the meets, the bounds, the corners, the reference points. And now we can find through that extrinsic evidence the exact property that was conveyed in the deed of trust. OK, so let let me ask you, Judge Bennett's question, which is if we don't agree with you or we think that this is still an open question. Should we certify this question to the Idaho Supreme Court? They don't they have a very specific way of looking at these things. I don't think under the standards of certification, the Idaho Supreme Court, Idaho Appellate Rule 12.3 says one of the factors that it in which it will take certification is the question of law certified is a controlling question of law in the pending action in the United States court. As to which there is no controlling precedence in the decisions of the Supreme Court. There are four and five controlling cases. The Tricor investment case. Yeah, well, counsel, I'll be honest with you. I got to be honest with you. Some of those cases cut against you. That's the question. So, I mean, that's the conflict that I think I'm struggling with. That's true. But I think you have to look at the last word of the court. And they specifically upheld this incorporation by reference to some county board provisions. And that's a lot less definite than the Gilgal subdivision. Let's let's assume for the sake of argument. And Judge Meyer did not have that case before him when he issued the decision below. That's true. That's true. Let's assume for the sake of argument that it did reference the plat and its recording number in that document attached to the day. You still have to walk into the county recorder's office and say, find this property for me. And they pull up the plat. And this is no different. Well, I think you're right on that. And that's why I'm asking the question. Because it's clear that you can reference documents. I think the open question here is whether this lot one block one Gilgal subdivision is an adequate reference of that plot. And clearly to Justice Jones it is. To a lot of attorneys it might be. I don't know whether that's enough for the Idaho Supreme Court. But that's not a tax identification. That's a subdivision identification. I understand. I understand. All right. That's all I have, Your Honor. Thank you. Thank you. I would like a minute rebuttal if I could get it. But I've used much more. Okay. Yes. Thank you. You can have a minute for rebuttal. So proceed to appellee. Thank you, Your Honor. May it please the court. My name is Matt Christensen. I represent the Chapter 7 trustee, Mr. Ford Alsasser. I'll try and touch on some of the issues that have already been discussed by separate counsel. The first one being the acknowledgement issue. I think that's the biggest issue in the case. And I want to start with that stipulation of facts, which Judge Nelson asked about. Paragraph 12 specifically separates oral statements from any other sort of statement. And that was done purposely by the trustee that all the parties understood. There's no oral acknowledgement, nor is there any other acknowledgement. But can I ask you about that? Because I mean, paragraph 15 seems. Would you agree that paragraph 15 would say there was no paragraph 12 in the stipulation? Would paragraph 15 in your mind satisfy the acknowledgement requirement? No. No, Your Honor. And that stems back to the language of the statute itself. The statute in place 55-707, which said the acknowledgement must not be taken unless the officer knows or has satisfactory evidence to know that the person signing it has the capacity to sign it. The statute separates those two things. So you think that you think the capacity you think that. So what is what do you think that acknowledgement would be? He'd have to orally acknowledge that he's also the president. I don't think you're acknowledging your capacity. You're acknowledging that my signature on that document is what you're acknowledging. And that that signature is not on behalf of myself personally, but is on behalf of this company. But that's a separate thing from the notary public knowing what the capacity is. The person themselves has to acknowledge the thing. But counsel, I'm looking at the statute and the language of the statute, unless the officer taking it knows or has satisfactory evidence from a credible source. Doesn't that modify everything in the statute, whether it's an individual or a representative? I think it modifies what knowledge the officer taking it has. No, no, but I'm saying no. But isn't it saying that the officer that the notarial officer has to know or has satisfactory evidence of the things that the statute requires? So it's either he knows it or he has satisfactory evidence without describing what that satisfactory evidence is as to the corporate status. And that's the prerequisite for that officer taking the acknowledgement. That's the way it reads is that you can't take an acknowledgement unless you have that knowledge. Unless you know or have satisfactory evidence from a credible source. But it doesn't say anything about that. That that acknowledgement has to be a conversation. Right. I agree with that. I don't think the acknowledgement has to be an oral acknowledgement. You can have a written acknowledgement. The issue is here. There's neither an oral or a written acknowledgement. Well, the way I read the statute, you can also have knowledge that comes from prior things that you've done. That it doesn't have to be knowledge that comes about at the instant of the notarial acknowledgement. Right. I agree that the knowledge of the officer doesn't have to be instantaneous with the actual acknowledgement by the individual. So your concern, I still don't understand the concern here. Because Mr. Piles comes in and signs the document that he's signed. Similar that he's done dozens of times, apparently. At least with two or three notaries. And they know that it's for Shiloh. The document says it's for Shiloh. What are you looking for that would make this complete? Him saying, hey, by the way, I'm here to sign not on my personal behalf, but on behalf of Shiloh? Or that he is signing it on his personal behalf. Whatever capacity he's signing it on. But the document itself says it's Shiloh. I'm just baffled by this argument. I don't understand it. The document says it's Shiloh. In every one of these cases, Mr. Piles signed the document in front of the notary that was then notarizing it. But the statute would also apply if I'm the one signing the document. I had already signed it. I'm bringing it in to someone. I need to acknowledge that signature. So the statute is broad enough to cover both instances. Where I may bring it in and say, I'm signing this document, and I'm signing it on behalf of this company. Here's my signature. It also covers when I bring a document I've already signed to that notary. Go ahead. No, go ahead, Judge Nelson. Well, I was going to switch over to the statute. Yeah, I was too. So please do that. Why does the statute not solve the problem here? You agree that for any other case, if a case is brought tomorrow, we don't have the same problem on something that was notarized prior to 2017, correct? I would say I 95% agree with that. Okay. What's your 5% hesitation? Because of the language in the new statute, it refers to failures of the notary public to comply with Chapter 1 of Title 51. The requirements prior to 2017 were in Chapter 7 of Title 51. And the new statute specifically references, hey, this doesn't change challenges to the notary's acts pursuant to any other provision of Idaho law. Well, if you're right about that, if you're right about that, then it wouldn't apply retroactively to the situation here, right? Correct. I'm missing something here, Council. Maybe we're looking at House Bill 107, right? I don't have the actual bill. Okay, but the first provision of the statute sets out the acknowledgement statute, right? I mean, the statute repeats what it's affecting. Right. And isn't that what we're talking about in this case? In this, well, the savings clause in the new statute was meant to address the same issue that the savings clause in the 2017 statute included. The 2017 statute is what got rid of Chapter 7, replaced it with Chapter 1. Right. But there's no question that if this statute applied to this case, we would have to reverse the bankruptcy court, right? If this statute applied to this case, yes. So tell me why you don't think this statute applies to this case. Well, the biggest reason is because I don't think it has, like Judge Nelson pointed out, there's nothing in the statute that applies it to currently pending cases. Is there any Idaho Supreme Court decision ever that has said that that language you just said is necessary to have the statute apply to pending cases? I think there's Supreme Court opinions that say for a statute to be applied retroactively, you need a clear legislative intent. Oh, I agree. We don't have that. Here we have a clear legislative intent that it applies retroactively. That's not the question. I don't believe we have that legislative intent. Wait, wait, wait, wait, wait. Oh, well, maybe it's the definition of retroactive. It clearly applies to actions that occurred in the past. Notarized documents prior to 2017. There's no dispute that this legislation covers that, right? Correct. I think the legislation covers claims that the notary did not comply with the statute correctly, and those claims are not retroactively applied. It would be applied if I wanted to go now and try and avoid a deed of trust on behalf of the trustee and say, hey, you didn't comply with the statute back in 2015 when you signed this deed of trust. But counsel, the statute says the validity of an instrument recorded prior to 7-1-20-17 shall not be affected by the failure. Shall not be affected by the failure. And then section two says, because of the legislatively determined emergency, this act shall be in full force and effect on and after its passage and approval. I mean, the way I interpret statutes is when you have something that says shall not be affected, and then you have a section that says the shall not be affected language shall come into effect now. That that would apply to anything that's going on now, whether the lawsuit was filed yesterday, whether the lawsuit was filed the day before the statute was passed or the day after. Why is that interpretation wrong, given the specific language of the statute? I think for the reason I outlined regarding the legislative intent that it applied to then pending claims and the other reason. Well, the legislative history says it does. That seems to cut against you. If we can consider the I guess it's this preamble language that appears to be legislative history that suggests that it can apply to pending claims. But again, that's legislative history. That's not the actual language in the statute. The statute does not contain any language that it applies to claim. Where's the case that says that has to apply? Here's what I'm struggling with. I understand we got a lot of cases from the Idaho Supreme Court where that language is put in there and says this does apply to pending litigation. But I've never seen a case. I can't find one in the federal federal courts or state courts that says that that language is required in order to apply to pending claims. So what case do you have that says that language is required to apply to a pending claim? I don't have a case I can cite the court to right now. So, but again, the other reason why we think that the statute doesn't apply to these claims is because the trustees claims are not based on. Violations of the provisions of Chapter 1 of Title 51. It's violations of Chapter 7 of Title 51, which the statute specifically recognized could still be reasons for challenging what the notary did. That's in part B of the new statute. Okay, can we turn to the statute of frauds on the. Well, first of all, if we don't agree with you or we think there's an open question, would you suggest that we certify this that question to the Idaho Supreme Court, which I guess is turning out to be a very narrow question. But the question being, does the new statute have application to then writing claims? I mean, I assume we'd have to rule in your favor on the first part of the acknowledgement. If we ruled in your favor on the first part of the acknowledgement that oral statements need to be made or some other acknowledgement, then this would be dispositive of that question. And if we think it's an open question, would you ask us to certify that to the Idaho Supreme Court? I think if the panel thinks it's an open question, whether I want it certified to the Idaho Supreme Court or not, doesn't necessarily matter. I don't think it's an open question. But if it is certification of the Supreme Court, maybe. Although you're telling me you can't cite any case law that says that that language is actually required. I guess you've got other arguments as well. Okay, let's move on to the statute of frauds. Tell me why this is not resolved by Exhibit A here, because the other cases don't include the actual tax parcel. The District of Idaho case and other ones, they don't actually have the tax parcel document attached. And so why isn't at page 425 of the ER in Exhibit A, the reference to the legal description is Lot 1, Block 1, Gilgal Sub. Why isn't that a reference to extrinsic evidence that the Supreme Court has said we can consider? Because the reference to the name of the subdivision and the reference to the lot and block number, that's not the evidence. The evidence is the plat that you find those things on. So if I'm trying to find where that property is or where that house is, I need the plat to know which streets I need to go to and how I get there. I totally agree with you. So your position is because it says Gilgal Sub, that's not a proper reference. If it said Gilgal Subdivision Plot, that would be a proper reference? I think if it included the reference to the plat, so Book 7 of 47, whatever it actually is in the plat book, that would change the whole legal description altogether. I agree the Idaho Supreme Court allows references to extrinsic evidence. They've specifically said an address is not extrinsic evidence. In that case, the Ray V. Frazier case, there was testimony that, well, I can go to the tax assessor's office and locate the tax ID number and then use that to find the legal description. I understand that, but here we don't have that problem because the tax ID is actually put into the record. So that's why I don't think it's covered by Frazier. Your Honor, in the trustee's view, whether it's the tax ID number or whether it's a lot and block and a subdivision reference, either way, you have to go somewhere else to find the actual evidence that otherwise should have been referred to. That's a given, but the Idaho Supreme Court has said you can do that. If you have an explicit reference to the extrinsic evidence, which you don't have here, and the Tri-Court case doesn't change that. The Tri-Court case there dealt with two different, there was a legal description of what was being transferred and then a separate description of what was not being transferred, what was being withheld. The description, the reference to the planning and zoning guidelines was of what was not being transferred. That was what was withheld. Okay. Let's say we agree with you that Tri-Court doesn't address it for their side. And let's say we also agree that Frazier doesn't cover it for your side. This is an open question. There's been sort of a split out there. Why shouldn't we certify this question to the Idaho Supreme Court? They have very specific ways of looking at this. I agree they have very specific ways of looking, and I think the case law that's out there is sufficient for this panel to be able to decide that question. I think that's really the second and third issue on certification is that it's not something the Idaho Supreme Court has addressed. I think they have. And at least with regard to quality properties, it probably would resolve the litigation on that deed of trust by getting that question from the Supreme Court. It would resolve it? I think with regard to the quality properties deed of trust, there's both a notary acknowledgement issue and a legal description issue. If the Idaho Supreme Court rules on the legal description issues and says it's insufficient, the acknowledgement issue doesn't matter. Counsel, I have a question if I could interject. I see you're over your time, but we appreciate your answer. At least I would. If the Supreme Court of Idaho has addressed this question, but in their opinions addressing it, they've given answers and decisions that point in contradictory ways, then we can't quite figure out what their position is. Is that a valid basis to certify? I think it could be, provided the other standards for certification are met. It's a controlling issue. I think in either case, the acknowledgement or the legal description issue, it's obviously a controlling issue. If the guidance from the Idaho Supreme Court is confusing enough that it can't be determined what they would decide on that issue, that probably is a basis for certifying questions to the Idaho Supreme Court. Okay, thank you. Thank you. There's a couple other issues that I didn't address. I'll just rest on what's in our briefing on the sufficiency of the amendments and the convergence between the deeds of trust and the promissory note issues. We won't address those further. Thank you, Your Honors. You're welcome. And we will review those on the briefing. So we still have rebuttal time. But if Mr. Edson and Mr. Manning can stick to their extended time periods, that would be appreciated. Mr. Edson. Thank you very much, Your Honors. Thank you, Your Honor. What I'd like to return to on this issue, on the acknowledgement issue, is that the state of the law was when these documents were executed, which in essence, Judge Bennett touched on it, which is Idaho Code 55707. There's plenty of case law that addresses what was a notary's obligation or duty to record an acknowledgement or to satisfy the acknowledgement statute. Essentially, two points. One, did the person physically appear before the notary and identify who they were? And then two, with regard to incorporation, did they satisfy themselves, either from their own personal knowledge or from other way, that that person had a relationship to the entity executing the document? I would submit that both those things are clearly stipulated to in the statement of facts, that those things happened. This is not a case, like in slight, where people signed outside the presence of the notary. They were done physically, personally, in front of the notaries, all of whom knew the relationship of the corporate officer to the entity. And there's no question that those things happened. There's no falseness. There's no forgery. There's no assertion that these were attempts to circumvent the statute, that these were corporate acts by the officer of the corporation of whom all of these folks were aware of his relationship. And the acknowledgement, Judge Nelson, as you correctly pointed out, that is historically what has been represented as what is an acknowledgement in the state of Idaho. There is no case law in the state of Idaho that ever mentions a verbal acknowledgement as being a necessary piece of an acknowledgement. And there is no statute. There's no language within the statute, as Judge Bennett noted, that requires this verbal assertion. So we think that Judge Meyer missed the mark widely on that issue. And the other defenses we had to the acknowledgement issue, I think, you know, willing to leave that on the briefs. But I think when you look at the law and you look at what the statutes were at the time, we prevail. The trustee, excuse me, the judge's opinion should be overturned. Thank you, Mr. Edson. Mr. Manwari. You're still on mute. I apologize. In one minute, I think the collective years of practice of law between those who are on the court and arguing here is probably well over 200 years. And I'd venture to guess that in those 200 years between all these lawyers prior to Judge Meyer's bankruptcy court ruling, not one of us ever thought or believed or found any requirement that when you made an acknowledgement, if we were given it or our secretaries or the title company or whatever, that there was some verbal requirement that the sign or has to make this verbal requirement. It's just not there. Judge Myers created that out of whole cloth. It's not in the law. It's not in the statute. And the tricore investment case on the legal description issue does allow the reference to outside extensive evidence, whether that was in a reservation or in the grant of the property is a distinction without a difference. It has to be passed the muster. And this deed of trust did pass that muster by reference to the lot block and subdivision. Thank you, Your Honors. Thank you, Mr. Manwari. So the panel will now submit this case and the council will hear from us in due course. I would also like to thank again all counsel for their excellent advocacy on this case. It's a difficult case, but you will hear from us eventually. Thank you. Thank you, Your Honors. Thank you, Your Honors.
judges: GOULD, BENNETT, NELSON